Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement as:
 STIPULATIONS
1. On 19 May 1997, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times.
3. Defendant was self-insured for workers compensation purposes with Key Risk Management Services, Inc., acting as its servicing agent.
4. Defendant admits that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment to his low back on 19 May 1997.
5. Plaintiffs Form 22 Statement of Days Worked and Earnings of Injured Employee indicates that plaintiff had an average weekly wage of $282.87, yielding a compensation rate of $188.59. Plaintiff seeks to have his average weekly wage and compensation rate calculated on the basis of a similar employee.
6. Defendant has compensated plaintiff with weekly benefits at the rate of $188.59 from 21 May 1997 and continuing through the date of the hearing before the Deputy Commissioner.
7. The parties stipulated into evidence exhibit one, which consists of ten separate exhibits. The parties also stipulated the following items into evidence: plaintiffs exhibit one, an I-9 Form; plaintiffs exhibit two, a recent Full Commission Opinion and Award; defendants exhibit one, plaintiffs vocational rehabilitation reports; and defendants exhibit two, employment records pertaining to plaintiff. Subsequent to the hearing before the Deputy Commissioner defendant submitted two pages of plaintiffs payroll records.
8. The issue to be determined is whether plaintiff remained disabled within the meaning of the Act after May 1998. If the answer to that question is in the affirmative, a further determination must be made as to the appropriate benefits to which plaintiff is entitled.
***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-year-old legal citizen of Mexico. Plaintiff was educated in Mexico but did not complete high school. He has only a minimal command of the English language. Plaintiffs employment history consisted primarily of manual labor jobs such as farming, construction, carpentry, and machine operation.
2. Plaintiff was employed as a machinist by defendant. Plaintiff was hired in this capacity on 17 March 1997 and worked until the date of his injury on 19 May 1997. Plaintiffs job duties as a machinist for defendant included sanding and grinding metal parts and welding.
3. When plaintiff applied for the position with defendant, he presented a social security card and a resident alien card. Neither of these documents was genuine or valid. Defendant was unaware that plaintiff was fraudulently misrepresenting his work status in the United States.
4. On 19 May 1997, plaintiff sustained an admittedly compensable injury by accident to his back as a result of a specific traumatic incident of the work assigned. Defendant admitted liability for this injury with a Form 60 Employers Admission of Employees Right to Compensation filed with the Commission on or about 3 June 1997. Plaintiff began receiving temporary total disability compensation benefits pursuant to this Form 60 on 21 May 1997.
5. Two days following his admittedly compensable injury by accident, plaintiff was seen by Mark D. Bulgarelli, D.O., at Black River Family Practice. Dr. Bulgarelli took plaintiff out of work. Plaintiff was subsequently seen by Murray K. Seidel, M.D., an orthopedic surgeon, at Southeastern Orthopaedic Clinic. Dr. Seidel prescribed a lumbosacral corset and medication. A subsequent MRI revealed that plaintiff had two central disc herniations at L4-L5 and L5-S1.
6. Plaintiff was also treated by James W. Markworth, M.D., and Physicians Assistant Armando Gonzalez, at Southeastern Orthopaedic Clinic. A discectomy was discussed with plaintiff, but he opted to undergo a series of epidural injections first. By 4 March 1998, plaintiff was doing much better and a functional capacity evaluation was ordered.
7. The functional capacity evaluation, which was considered a valid test with maximum effort exerted by plaintiff and no symptom magnification, indicated that plaintiff could not return to work in his prior position as a machinist. It was determined that plaintiff could work with restrictions of no heavy lifting and with limited stooping, squatting, standing and walking.
8. After it was determined that plaintiff was incapable of returning to work for defendant due to the nature of his restrictions, vocational rehabilitation was initiated. On 26 May 1998, plaintiff first met with Janet Clarke, the rehabilitation coordinator assigned to his case. Ms. Clarke completed a vocational assessment and a job search ensued.
9. Prior to his employment with defendant, plaintiff had worked for a short period of time as a machine operator for Leslie Locke. Plaintiff indicated to Ms. Clarke that he was interested in attempting to return to work at Leslie Locke because he had left that employment on good terms and he felt he might be capable of performing the job. Ms. Clarke then contacted the personnel office at Leslie Locke to inquire about employment opportunities and hiring procedures.
10. Ms. Clarke learned that all hiring for Leslie Locke was handled through Manpower, a temporary agency. If the employer was satisfied with the temporary employee, then the employee might later be hired as a permanent Leslie Locke employee. Ms. Clarke contacted Manpower on 10 June 1998 and arranged for plaintiff to apply for a position at Leslie Locke. Ms. Clarke then contacted plaintiff, who went to Manpower on 30 June 1998 to submit an application.
11. When plaintiff presented his application and employment documentation at Manpower, the agency contacted the Social Security Administration and discovered that plaintiffs social security card was invalid. The number on plaintiffs social security card was registered to a different person. Accordingly, Manpower was unable to process plaintiffs application or hire him in any capacity for any employer, and plaintiff was neither considered nor hired by Leslie Locke.
12. In anticipation of the hearing before the deputy commissioner, Ms. Clarke completed a labor market assessment by contacting twenty-one employers in plaintiffs general locality. Out of the twenty-one prospective employers Ms. Clarke attempted to contact, most were out of business, unavailable when she called, or had employment that would not have been suitable for plaintiffs physical capacity. At least three of the prospective employers had jobs that would not have been appropriate because they required walking or standing in excess of plaintiffs ability. Ms. Clarke identified a security guard position that would have been difficult for plaintiff because of his limited skills in writing in English, a requirement of the job. Two prospective employers indicated to Ms. Clarke that they occasionally hire for light duty positions, but no specifics were given to her regarding the types and demands of these light duty jobs. Finally, Leslie Locke was unable to consider plaintiff through Manpower because of his illegal alien status.
13. The record contains no evidence of the physical requirements of the job at Leslie Locke or of whether plaintiff would have been able to perform the job, except that plaintiff did testify that he thought he might have been able to perform portions of the job he previously had there.
14. Following plaintiffs release to return to work and through the date of the hearing before the deputy commissioner, plaintiff had not returned to suitable, gainful employment. Plaintiff worked for a short period of time, about three to four hours for three days, as a carpenters helper. Plaintiff earned $5.50 per hour and was paid in cash. This limited employment does not demonstrate that plaintiff is able to compete with others for wages. Plaintiff has worked in no other capacity since being released to return to work.
15. On 11 September 1998, Dr. Markworth released plaintiff at maximum medical improvement "from a conservative standpoint and assigned a ten percent permanent partial impairment rating to his back as a result of the admittedly compensable 19 May 1997 injury by accident. Dr. Markworth also indicated that surgery remained an option. As of the date of the hearing before the Deputy Commissioner, plaintiff had not undergone the discectomy.
16. Although plaintiffs illegal alien status is a barrier to finding employment in the United States, at the time of the hearing before the deputy commissioner, plaintiff was unable to return to suitable employment given his pain and restrictions and his work experience and qualifications.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 19 May 1997, plaintiff sustained an admittedly compensable injury by accident to his back as a result of a specific traumatic incident of the work assigned. G.S. 97-2(6).
2. Despite the fact that he used fraudulent documentation to become employed by defendant and that he is an illegal alien, plaintiff is an employee entitled to benefits under the Act. G.S. 97-2(2).
3. Plaintiff is entitled to continuing total disability compensation until he returns to work or until further order of the Industrial Commission. G.S. 97-29.
4. Plaintiffs average weekly wage is properly calculated based on the Form 22 wage chart. G.S. 97-2(5).
5. As a result of the compensable injury by accident on 19 May 1997, defendant is obligated to pay for all reasonably necessary medical treatment which tends to effect a cure, give relief, or lessen the period of plaintiffs disability. G.S. 97-2(19); G.S. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall continue paying plaintiff total disability compensation in the amount of $188.59 per week until such time as plaintiff returns to work or until further order of the Industrial Commission.
2. Defendant shall continue to provide plaintiff with all reasonable and necessary medical treatment related to plaintiffs compensable injury by accident.
3. Plaintiffs counsel is entitled to a reasonable attorneys fee of twenty-five percent of the compensation owed plaintiff. Accordingly, defendant shall forward every fourth compensation check directly to plaintiffs counsel.
Defendant shall bear the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER